UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSE R. LOPEZ, RICHARD COLON and
JAMES E. CROMER, on behalf of themselves
and all other employees similarly situated,

                                    Plaintiffs,             No. 07-CV-6186 CJS

     -vs-

                                                   DECISION AND ORDER

FLIGHT SERVICES & SYSTEMS, INC. and
TODD DUNMYER,
                                  Defendants.

_____

APPEARANCES

For Plaintiffs:            Chad W. Flansburg, Esq.
                           Phillips Lytle LLP
                           1400 First Federal Plaza
                           Rochester, New York 14614

For Defendants:          R. Scott DeLuca, Esq.
                           Elizabeth A. Cordello, Esq.
                           Underberg & Kessler LLP
                           1900 Main Place Tower
                           Buffalo, New York 14202

INTRODUCTION

This is an action alleging employment discrimination and retaliation, pursuant to

Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et*

*seq.*, the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.,* and 42

U.S.C. § 1981, claims for unpaid wages, pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law, and state common-law

1

claims for fraud, breach of contract, breach of implied covenants of good faith, tortious interference with contract, and unjust enrichment.  Now before the Court is Defendants' motion [#13] to dismiss portions of Plaintiffs' First Amended Complaint [#10] pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b).  For the reasons that follow, the application is granted in part and denied in part.

BACKGROUND

The following facts, taken from the First Amended Complaint, are accepted as true for purposes of this motion.  Plaintiffs Jose Lopez ("Lopez") and Richard Colon ("Colon") are "Puerto Rican," and Plaintiff James Cromer ("Cromer") is "African American." Defendant Flight Services & Systems, Inc. ("FSS") is a company which, at all relevant times, provided "flight services" to U.S. Airways at the Rochester International Airport, which services included "directing landed aircraft to the proper gate for discharge of passengers and takeoff, cleaning . . . the aircraft, and . . . loading and unloading . . . luggage." (First Amended Complaint at ¶ 43).  At all relevant times, Plaintiffs worked for FSS as "Ramp Agents," in which capacity they were hourly, non-exempt employees. Defendant Todd Dunmyer ("Dunmyer") was also employed by FSS and had supervisory authority over Plaintiffs.

Lopez and Colon worked for FSS between April 2005 and August 2005, while Cromer was employed there between April 2005 and October 2005.  During their employment, Plaintiffs were required by FSS to work during portions of their meal breaks, or to work without meal breaks, and were not compensated for such work.  Additionally, Plaintiffs worked more than 40 hours per week, and were not paid time-and-a-half for their overtime.  In that regard, Plaintiffs allege that Dunmyer altered their time cards, to

inaccurately reduce the number of hours worked, without their knowledge, and mis-represented to them that their payroll statements were accurate.

Also during Plaintiff's employment, FSS allegedly instituted an "English-only/No-Spanish" language rule. (First Amended Complaint ¶ 45).  Pursuant to that rule, Lopez and Colon were told that they could not speak Spanish at work.  Subsequently, Dunmyer heard Lopez speaking Spanish at work, and told him to stop.  Dunmyer also told Cromer that he was going to terminate Lopez for speaking Spanish.  Cromer replied that such conduct would be discriminatory.  Subsequently, Lopez complained about the "English-only" rule to FSS's Human Resources Office, and his employment was terminated the following day.  Upon terminating Lopez's employment, Dunmyer allegedly told Lopez  "to go home and sit on his Puerto Rican bum." (*Id*. at ¶ 58).

Colon and Lopez also allege that they were required to work alone during their shifts, and to remain at work after their shifts had ended, while "white" employees were allowed to work in groups and to leave work as soon as their shifts ended.  (*Id*. at ¶ ¶ 69-70).  After Colon complained to FSS management about these practices, FSS terminated his employment.

Additionally, Cromer alleges that he was denied promotion during his employment, while less-qualified, white employees were promoted instead.  Subsequently, Cromer told Dunmyer that he was going to file a discrimination complaint, and Dunmyer terminated his employment.  Lopez and Colon also believe that FSS failed to consider them for promotion for discriminatory reasons.

After FSS terminated their employment, Plaintiffs filed discrimination complaints with the New York State Division of Human Rights.  In Lopez's administrative complaint,

he alleged that he was discriminated against because of his "national origin," which he described as "Puerto Rican," and because he spoke Spanish.  Lopez further indicated that he was denied pay raises, while "white employees" with less experience were given raises.  Additionally, Lopez stated that after Dunmyer prohibited him from speaking Spanish, he complained to FSS's human resources office, and that Dunmyer terminated his employment the following day.  As for Colon, he stated in his administrative complaint that he was discriminated against because he is "hispanic," and that he was treated differently than "white employees."  Additionally, Colon stated that he had complained to his manager about the fact that "Black and Hispanic" employees were forced to work by themselves, unlike their "white" counterparts.  Finally, Cromer, in his administrative complaint, alleged that FSS had discriminated against him, based on his "race and color," by denying him promotions and by unfairly disciplining him.  Cromer also alleged that Dunmyer terminated his employment shortly after Dunmyer learned that he had threatened to file a discrimination claim.

On April 10, 2007, Plaintiffs commenced the instant action.  The First Amended Complaint purports to assert the following claims, on behalf of all Plaintiffs: 1) Title VII disparate treatment discrimination; 2) Title VII retaliation; 3) § 1981 race/color disparate treatment discrimination; 4) § 1981 retaliation; 5) NYHRL disparate treatment discrimination; 6) NYHRL retaliation; 7) FLSA unpaid wages; 8) NY Labor Law unpaid wages; 9) fraud; 10) breach of contract; 11) breach of implied covenants of good faith; 12) tortious interference with contract; and 13) unjust enrichment.[1]

---

[1]Claims 9-13 are New York State common-law claims.

On September 14, 2007, Defendants filed the subject motion to dismiss some, but not all, of Plaintiffs' claims.  For purposes of clarity, the Court will break the motion down in terms of specific claims.

Claim 1: Title VII Discrimination

Defendants seek to dismiss portions of the first claim, as unexhausted. Specifically, Defendants contend that Lopez and Colon cannot pursue claims based on race or color, since their administrative complaints referred only to discrimination based on national origin.  Similarly, they contend that Cromer cannot pursue a claim based on national origin, since his administrative complaint alleged discrimination solely on the basis of race and color.

Claim 2: Title VII Retaliation

Defendants maintain that this claim must be dismissed in its entirety, since none of Plaintiffs' administrative complaints alleged retaliation, even though they all had been terminated from their employment with FSS prior to filing the complaints.

Claims 9, 10, 11, 12 and 13: State Common-law Claims

Defendants contend that Plaintiff's state common-law claims for fraud, breach of contract, breach of implied warranties of good faith, tortious interference with contract, and unjust enrichment, are pre-empted by the FLSA, since they are essentially duplicate Plaintiffs' FLSA claims.

Claim 9: Fraud

Alternatively, Defendants argue that even if Claim 9 is not preempted by the FLSA, it still must be dismissed because it does not allege fraud with particularity as required by FRCP 9(b).  Specifically, Defendants argue that the fraud claim fails to specify when and

where the allegedly fraudulent statements were made.

In opposition to the motion, Plaintiffs concede that Cromer is not pursuing a national origin claim, but maintain that Lopez and Colon have exhausted claims for race and color discrimination, since such claims are "reasonably related" to the allegations in their administrative complaints.  On that issue, Plaintiff's counsel suggests that Lopez and Colon may have been confused between the concepts of race and national origin. Additionally, Plaintiffs contend that their retaliation claims are "reasonably related" to the allegations in their administrative complaints, which, they contend, describe incidents of retaliation.  Moreover, Plaintiffs maintain that Claims 9-13 are not preempted, because they "do not directly overlap with their claims under FLSA." (Plaintiff's Memorandum of Law at 13).  And finally, Plaintiffs indicate that Claim 9 pleads fraud with sufficient particularity.  Specifically, as for when and where the alleged fraud occurred, Plaintiffs state that the fraud "occurred over an extended period of time," and that "defendants are in possession of the computerized time-keeping system that is able to document each instance that the number of hours worked was reduced." (*Id*. at 15).

On January 18, 2008, counsel for the parties appeared before the undersigned for oral argument of the motion.  During oral argument Defendants withdrew the portion of their motion directed at Colon's race discrimination claim.  Additionally, Plaintiffs conceded that they are not pursuing a national origin claim on behalf of Cromer.  The Court, having thoroughly considered the parties' written submissions and the arguments of counsel, now grants Defendants' motion in part and denies it in part.

ANALYSIS

*The 12(b)(6) and 9(b) Standards*

6

In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.  To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, — F.3d —,  2007 WL 4372962 at  *4 (2d Cir. Dec. 14, 2007) (citations and internal quotation marks omitted).  However, pursuant to FRCP 9(b), claims alleging fraud are subject to a heightened pleading standard. FRCP (9)(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  Specifically, to state a claim for fraud, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (citations omitted).

### *Title VII's Exhaustion Requirement*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds, Kessler v. Westchester County Dept. of Social Servs.*, 461 F.3d 199 (2d Cir. 2006).  It is undisputed that before commencing a Title VII lawsuit, a plaintiff ordinarily must exhaust his administrative remedies.  However, it is equally clear that

claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.  A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.  This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering.

In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.

*Deravin v. Kerik*, 335 F.3d 195, 200-201 (2d Cir. 2003) (citations, internal quotation marks and footnote omitted).  Consequently, "claims may still be considered 'reasonably related' even if the EEOC did not investigate the charge, so long as it had the opportunity to do so." *Dargento v. Bally's Holiday Fitness Centers*, 990 F.Supp. 186, 193 (W.D.N.Y. 1997); *see also, Boimah v. Cumberland Farms, Inc.*, No. 03-CV-0121, 2005 WL 3671628 at *4 (N.D.N.Y. Dec. 30, 2005) ("It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key."), *aff'd* 239 Fed.Appx. 632 (2nd Cir. Jun 20, 2007).[2]

A frequently-litigated issue in this regard involves the distinction between claims based on national origin and race.  On this point, the Second Circuit has stated that,

[b]ecause an assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin, raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination.  However, courts have also

---

[2]During oral argument, Defendants' counsel stated that, in deciding whether Plaintiffs' claims in this action are reasonably related to the claims in their administrative complaints, the Court need only look at what claims the administrative agency *actually investigated*.  However, as the foregoing cases hold, that assertion is incorrect.

> recognized that race and national origin discrimination claims may
> substantially overlap or even be indistinguishable depending on the specific
> facts of a case.

*Id.* at 201 (citations and internal quotation marks omitted).

### FLSA Preemption

The general legal principles applicable to a consideration of federal preemption of

state law indicate that

> [f]ederal preemption can be express or implied, but in either case is
> primarily a question of Congressional intent.  Preemption can generally
> occur in three ways: where Congress has expressly preempted state law,
> where Congress has legislated so comprehensively that federal law
> occupies an entire field of regulation and leaves no room for state law, or
> where federal law conflicts with state law.

*Clearing House Association, L.L.C. v. Cuomo*, — F.3d — , 2007 WL 4233358 at *4 (2d

Cir. Dec. 4, 2007) (citations and internal quotation marks omitted).  The Second Circuit

Court of Appeals has not indicated whether state common-law claims such as those

being asserted here are preempted by the FLSA.  However, the Fourth Circuit recently

held that such claims are preempted where they are essentially duplicative of FLSA

claims.  Specifically, in *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007),

the Fourth Circuit held that state-law claims for breach of contract, negligence, and fraud,

were preempted by the FLSA, where those claims "merely duplicated FLSA claims." *Id*.

("[W]e must hold today that Congress prescribed exclusive remedies in the FLSA for

violations of its mandates. And we note that we are not alone in so concluding.  Because

the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class

Members' FLSA-based contract, negligence, and fraud claims are precluded under a

theory of obstacle preemption.") (citations omitted).  Moreover, almost without exception,

the District Courts that have considered the question have reached the same result. See,
e.g., *Choimbol v. Fairfield Resorts, Inc.*, Civil Action No. 2:05cv463, 2006 WL 2631791 at
*5 (E.D.Va. Sep. 11, 2006) ("[D]istrict courts examining the issue of preemption have
repeatedly focused on whether the factual basis for claims essentially duplicate or are
equivalent to the plaintiffs' respective FLSA claims."); *Petras v. Johnson*, No. 92 CIV.
8298 (CSH), 1993 WL 228014 at *2, 3 (S.D.N.Y. Jun. 22, 1993) (Noting that "[c]ourts
have consistently held that [ § 207 of the FLSA] is the exclusive remedy for enforcing
rights created under the FLSA," and dismissing the plaintiff's fraud claim, finding it "clear .
. . that the defendants' alleged fraud lies simply in concealing plaintiff's rights under the
FLSA.")

        Based upon these applicable principles of law, the Court finds, at the outset, that
some of Plaintiffs' claims under the first and second causes of action were
administratively exhausted, while some were not.  First, as to the claims that were not
exhausted, it is clear that Cromer did not exhaust a claim for "national origin"
discrimination, although he apparently is not attempting to assert such a claim in any
event.  Further, Colon did not exhaust his retaliation claim, since his administrative
complaint did not mention retaliation, or even indicate that his employment had been
terminated.  Moreover, even if his EEOC complaint had indicated that his employment
had been terminated, there is nothing in the complaint to indicate that such termination,

or any other adverse action, would have been retaliatory.[3]  Consequently, because

Cromer's national origin claim and Colon's retaliation claim are not reasonably related to

the specific claims in their respective administrative complaints, they are dismissed.

However, Cromer clearly exhausted his race and color discrimination claims.

Moreover, Cromer's complaint describes retaliation, even though he did not specifically

allege such a claim.[4]  Additionally, the Court finds that Lopez and Colon exhausted their

race and national origin claims.  In that regard, Lopez indicated that he was being

discriminated against because he was Puerto Rican, and while he did not also

specifically use the word "race," he used the term Puerto Rican to differentiate himself

from "white employees."  Consequently, Lopez's administrative complaint suggests

issues related to both race and national origin.  Similarly, Colon's complaint suggests

---

[3]Plaintiff's Memorandum of Law erroneously suggests that, in Colon's EEOC complaint, he indicated that he complained to his supervisor, and as a result, was not allowed to leave work at the end of his shift. (Plaintiff's Memorandum in Opposition [#18] at 3).  However, the "quote" upon which Plaintiffs' counsel relies in this regard is actually comprised of statements taken out of context from separate paragraphs of the administrative complaint, and placed together in a way that makes it appear that Colon alleged retaliation, which is not the case. (See, Colon Administrative Complaint ¶ ¶ 4-5).

[4]Defendants argue to the contrary, relying in part upon *Abraham v. Potter*, 494 F.Supp.2d 141, 151 (D.Conn. 2007).  However, that case is factually inapposite, since the plaintiff in that case never indicated in his administrative complaint that he had engaged in protected activity. See, *Id.* ("The materials submitted by the parties contain no indication that Abraham put the EEOC on notice that he engaged in the type of protected activities.").  To the extent that Defendants are relying on later language in the *Abraham v. Potter* decision, stating that, "When the alleged retaliation is not based on actions subsequent to the filing of the EEOC charge, the relaxed exhaustion requirement described above does not apply," *Id.*, they are also incorrect, inasmuch as that discussion pertained to a separate type of "reasonably related" exception discussed in *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993), which is not being asserted by Plaintiffs here.  Alternatively, Defendants asserted, during oral argument, that Cromer had not engaged in protected activity, because Bob Morgan, the person to whom he stated that he was going to file a discrimination complaint, was employed by U.S. Air, not FSS.  However, Dunmyer allegedly overheard Cromer's statement to Morgan, and asked Cromer why he was going to file a complaint, to which Cromer replied that he was tired of being mistreated. (Cromer Administrative Complaint ¶ 6).  The Court finds that this amounts to protected activity.

both such issues, or perhaps confusion between the concepts of race and national origin, inasmuch as he used the term "Hispanic"[5] to differentiate himself from "White" and "Black" employees.  Consequently, his complaint arguably raises issues of both national origin and race.  The Second Circuit has stated that, "courts should not attempt to draw overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint[.]" *Deravin v. Kerik*, 335 F.3d at 202 (citation omitted). Here, Defendants are asking the Court to draw such an "overly fine distinction" at the pleading stage, however, the Court declines to do so.  Lastly, the Court finds that Lopez's administrative complaint describes retaliation, and is therefore reasonably related to his Title VII retaliation claim.  To summarize, the Court finds that all of Plaintiffs' Title VII claims are exhausted, with the exception of Cromer's national origin claim and Colon's retaliation claim.

        As a final note regarding the exhaustion of administrative remedies, Defendants argue, in their reply brief, that all of Colon's Title VII claims are untimely, because they were not filed within the 300-days limitation period.  However, the Court need not consider arguments raised for the first time in a reply brief. *See, ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 n. 12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief.") (citation

---

        [5]*See, e.g.*, 49 C.F.R. § 26.5 (Defining "Hispanic Americans" to include "persons of Mexican, Puerto Rican, Cuban, Dominican, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race[.]").

omitted); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (Holding that district court has discretion whether to consider arguments raised for the first time in a reply brief.).  Here, because Plaintiffs were not given a chance to address this argument, the Court declines to consider it as part of the pending motion.

The next issue is whether Plaintiffs' state common-law claims for fraud, breach of contract, breach of implied covenants of good faith, tortious interference with contract, and unjust enrichment are preempted by the FLSA.  On this issue, it is necessary to examine the factual basis for each of the state-law claims.  The fraud claim alleges that Defendants secretly reduced the number of hours that Plaintiffs reported on their time sheets, and misrepresented that Plaintiffs' paychecks and payroll reports were accurate, as a result of which, "plaintiffs did not receive wages and, if appropriate, overtime for all of the hours that they worked." (First Amended Complaint ¶ 141).  The breach of contract claim, of which the claim for breach of implied covenants of good faith appears to be duplicative,[6] alleges that FSS broke its promise to pay Plaintiffs "their hourly wage rate for all of their hours of work, and overtime at the rate of one and one-half times their regular wage rate, if they worked more than 40 hours in any work week," and, as a consequence, Plaintiffs "suffered damages for all unpaid wages and overtime." (*Id*. at ¶ ¶ 143, 145).  The tortious interference with contract claim alleges that Dunmyer interfered with the

---

[6]See, *Kamfar v. New World Restaurant Group, Inc.*, 347 F.Supp.2d 38, 52 (S.D.N.Y. 2004) ("In general, under New York law, a duty of good faith and fair dealing is implicit in every contract. A claim of breach of the duty of good faith and fair dealing, however, will be dismissed as redundant where the conduct allegedly violating the implied covenant is a predicate also for a claim for breach of an express provision of the contract.") (citations and internal quotation marks omitted).

13

Plaintiffs' "contractual terms with [FSS]," apparently referring to FSS's agreement to pay Plaintiffs their appropriate hourly wages and overtime. (*Id*. at ¶ 149).  And finally, the unjust enrichment claim alleges that FSS was unjustly enriched as a result of receiving Plaintiffs' labor "without lawfully paying for the same." (*Id*. at ¶ 142).  Accordingly, all of the state-law claims pertain to Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA.  Consequently, they are preempted by the FLSA and must be dismissed.[7]

CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part, with the following claims being dismissed: 1) Cromer's Title VII national origin claim; 2) Colon's Title VII retaliation claim; and 3) Claims 9-13 in their entirety.

SO ORDERED.

Dated: Rochester, New York
       January 22, 2008

ENTER:

 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[7]Because the Court finds that the fraud claim is preempted, it need not consider whether that claim has been pleaded in a manner that satisfies FRCP 9(b).