UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSE R. LOPEZ, RICHARD COLON and
JAMES E. CROMER, on behalf of themselves
and all other employees similarly situated,

                                    Plaintiffs,                No. 07-CV-6186 CJS

     -vs-

                                                          DECISION AND ORDER

FLIGHT SERVICES & SYSTEMS, INC. and
TODD DUNMYER,
                                    Defendants.

_____

APPEARANCES

For Plaintiffs:                Van Henri White, Esq.
                            18 Grove Place
                            Rochester, New York 14605

For Defendants:             Elizabeth A. Cordello, Esq.
                            Underberg & Kessler LLP
                            300 Bausch & Lomb Place
                            Rochester, New York 14604

INTRODUCTION

This is an action alleging employment discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.,* and 42 U.S.C. § 1981.  Now before the Court is Defendants' motion for summary judgment. (Docket No. [#69]).  The application is granted in part and denied in part.

1

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case, viewed in the light most-favorable to Plaintiffs.  In April 2005, Defendant Flight Services & Systems, Inc. ("Flight Services") was awarded a contract to provide flight services for U.S. Air at the Rochester International Airport.  Such "flight services" included directing aircraft, which had landed, to the proper gates for discharging passengers, loading and unloading luggage, and cleaning the aircraft.  At all relevant times, Flight Services' manager and supervisor at the Rochester airport was Defendant Todd Dunmyer ("Dunmyer").

At or about the same time that Flight Services was awarded its contract in April 2005, it hired various employees, including Plaintiffs Jose Lopez ("Lopez"), Richard Colon ("Colon"), and James Cromer ("Cromer").  Lopez and Colon are of Puerto Rican ancestry and are bilingual in English and Spanish, and Cromer is African American.  Lopez and Colon were hired for the entry-level position of "Ramp Agent."  Cromer, who had prior experience working with U.S. Air, was hired as a "Lead Ramp Agent."  Plaintiffs all worked for Flight Services for seven months or less.  In this regard, Colon stopped working due to an injury on or about August 29, 2005, and Flight Services terminated Lopez and Cromer in August 2005 and October 2005, respectively.

Colon and Lopez contend that they were required to work alone, while white employees were allowed to work in groups.  Colon and Lopez also allege that they were required to work past the end of their shifts, while white employees were not. *See*, Colon Aff. ¶ ¶ 21-23.  Colon states that he complained to Dunmyer about this, but the unequal treatment continued. *Id*. at ¶ 24.

Colon and Lopez sometimes spoke in Spanish amongst themselves at work.

Dunmyer directed Colon and Lopez not to speak in Spanish, purportedly because it bothered non-Spanish speaking employees. *See*, Lopez Aff. ¶ ¶ 5-8.[1]  However, at times Flight Services asked Colon and Lopez to speak in Spanish when it was necessary to communicate with a Spanish speaking passenger.  Lopez disagreed with the no-Spanish policy, and in or about August 2005, he complained about it to Flight Services' Human Resources employee Sarah Collier ("Collier"). Lopez Aff. ¶ 11; Lopez Dep. at p. 77. According to Lopez, he left Collier a message, but she did not return his call. Lopez Dep. at pp. 80, 85.  The following day, Dunmyer terminated Lopez's employment.  Lopez states that when Dunmyer fired him, he told him to "go home and sit on your Puerto Rican bum[,]" and that Lopez should "write him a letter telling him why [he] should give [Lopez his] job back." Lopez Aff. ¶ 13.

Flight Services maintains that it fired Lopez because he was unreliable. Specifically, Flight Services maintains that Lopez was frequently tardy or absent, without excuse.  Lopez admits that he failed to show up for work one day, because he thought he was able to do so, after working four 12-hour shifts, but he disputes every other alleged instance of tardiness, absenteeism or poor work performance upon which Flight Systems relies. *See, e.g.*, Lopez Dep. at pp. 76.

Prior to terminating Lopez's employment, Dunmyer told Cromer that he was going to fire Lopez for speaking Spanish, and Cromer responded that the no-Spanish policy

---

[1] Dunmyer has given equivocal statements about whether he told Lopez and Colon not to speak Spanish.  At his deposition, he stated that he told his supervisors that Colon and Lopez were entitled to speak Spanish on the job, and that he could not recall speaking to Colon or Lopez about speaking Spanish. Dunmyer Dep. at pp. 40-41.  Dunmyer admitted that it was possible, though, that he told Lopez that although he could not legally prevent him from speaking Spanish, he preferred that Lopez not speak Spanish. *Id.* at p. 42.

3

was discriminatory.  According to Cromer, Dunmyer asked him to lie, and support

Dunmyer's false contention that Lopez was a bad employee, but he refused to do so.

Subsequently, in or about October 2005, Flight Services accused Cromer of damaging a

luggage cart, and then lying about the accident.  Cromer denied that he damaged the

cart, and threatened to file a discrimination complaint.  Dunmyer terminated Cromer's

employment, purportedly because Cromer was not being truthful about the accident.

Subsequently, following an investigation into the luggage-cart accident by the U.S.

Occupational Safety and Health Administration ("OSHA"), which determined that Cromer

may not have been at fault, Flight Services gave him back pay, and offered to reinstate

him.  However, Cromer declined the offer of reinstatement.

During the period that Plaintiffs were employed by Flight Services, they were not

promoted.  However, six other individuals were either hired or promoted for supervisory

positions above those held by Plaintiffs.  None of the vacant supervisory positions were

posted before they were filled, so Plaintiffs had no opportunity to apply for them.[2]  Five of

those promoted were white, and one was "Hispanic."  The five white employees are Dave

Gauck ("Gauck"), Aaron Hartman ("Hartman"), Shawn Ostrowski ("Ostrowski"), Shane

Ladue ("Ladue") and John Consul ("Consul").  The Hispanic employee is Pablo Barcelo

("Barcelo").

Although Flight Services never posted the vacant supervisory positions, it

maintains that the job qualifications included "at least two years previous commercial

airline/aircraft services company ramp experience at a supervisor/management level or

---

[2]For purposes of the instant motion, the parties have agreed that the jobs were not posted.
However, Colon testified at deposition that at least one of the positions was posted for a short time. *See*,
Colon Dep. at p. 34.

military flight line experience." *See*, Def. Stmt of Facts ¶ 21.

Prior to being hired by Flight Services, Cromer had worked as a Ramp Agent for 17 months with U.S. Airways.  Cromer further states that he had "extensive supervisory experience," as a result of his 17 months of prior airline experience, and from managing his own business for over ten years. Cromer Aff. ¶ 19.  Cromer denies that the men who were hired for the supervisory positions were more experienced than him, and he indicates that he trained some of them.  However, it does not appear that Cromer has personal knowledge concerning the other mens' qualifications.  See, e.g., Cromer Aff. ¶ 18 (Suggesting that it is unclear how his qualifications compare to the other candidates, since the jobs were never posted); *see also id*. at ¶ 20 ("When you compare my experience to that of some of the individuals that were hired, I think I would have been competitive for any one of the positions that they were promoted to.").  The Court understands Cromer to mean that although he does not know the other mens' exact qualifications, he believes that he was well qualified, and that therefore he would compare favorably to them.

Cromer states in conclusory fashion that, "Typically [the men who were promoted] were men who I had trained, who have no supervisory experience and who had been on the job for less time than I was." Cromer Aff. ¶ 10.  Cromer states that Ostrowski was promoted to "Lead Agent Supervisor" "within a few months of being hired," and that Ostrowski had been fired from a previous job because he had "called another employee nigger." Cromer Aff. ¶ 12.  Cromer further states:

> For example, David Gauck had no supervisory experience.  Aaron Hartman
> also had no supervisory experience and only had experience as a fueler at

the airport.  John Consul had only worked for US Airways for six months[3]
prior to coming to [Flight Systems] and he had absolutely no supervisory
experience.  Shane Ostrowski who also had no supervisory experience had
been fired from two major airlines.[4]  And Shane Ladue had no supervisory
experience whatsoever in the military or airline industry.

One minute these guys would walk into Defendant Dunmyer's office and the
next minute they'd come out a supervisor.  That's how it was with absolutely
no notice that a supervisory position had opened up.

Cromer Aff. ¶ ¶  21-22.

Colon contends that he was "clearly qualified" for the positions that were filled.

Colon Aff. ¶ ¶  9-11.  On this point, Colon states that he previously was a forklift operator

for 15 years, whose duties were similar to that of a Lead Ramp Agent. *Id*. at ¶ ¶ 15-16.

Colon apparently does not have personal knowledge regarding the specific qualifications

of the men who were hired for the positions, but he complains that "some of the white

employees which they selected for this position came 'right off the street' without any

experience whatsoever as a ramp agent." *Id*. at ¶ 19.

Cromer states that Dunmyer "would sometimes greet employees with the phrase

"Yo my nigger" and "What up my nigga."  He even referred to me as 'black boy' and

'black james.'" Cromer Aff. ¶ 34.  Cromer states that he complained about this, though he

does not say to whom he complained. *Id*.

After their employment was terminated, Plaintiffs filed discrimination complaints

with the New York State Division of Human Rights ("NYSDHR"), which were dual-filed

---

[3]As discussed below, it actually appears that Consul had worked for U.S. Air for only 3 months
prior to being hired by Flight Services.

[4]Dunmyer agrees that Ostrowski was fired from two airlines prior to being hired by Flight Services,
and that he was promoted from Ramp Agent to Supervisor shortly after being hired. Dunmyer Dep. p. 51.

with the U.S. Equal Employment Opportunity Commission ("EEOC").  Cromer, Colon and Lopez filed their administrative complaints on June 27, 2006, July 12, 2006 and  August 2, 2006, respectively.  Cromer filed his administrative complaint less than 300 days after being terminated, while Colon and Lopez both filed their complaints more than 300 days after they stopped working.

On April 10, 2007, Plaintiffs commenced the instant action.  The First Amended Complaint [#10] purports to assert the following claims, on behalf of all Plaintiffs: 1) Title VII disparate treatment discrimination; 2) Title VII retaliation; 3) § 1981 race/color disparate treatment discrimination; 4) § 1981 retaliation; 5) NYHRL disparate treatment discrimination; and 6) NYHRL retaliation.[5]

Lopez is asserting claims for disparate treatment and retaliation under Title VII, Section 1981 and NYHRL.  His disparate treatment claim is twofold:  He alleges that he was improperly forbidden from speaking Spanish, and that he was given less-favorable working conditions and assignments than white employees.  His retaliation claim alleges that Flight Systems terminated him because he complained about the no-Spanish rule.

Colon is asserting claims for disparate treatment under Title VII, Section 1981 and NYHRL.  His disparate treatment claim is three-fold: He alleges that he was not promoted, improperly forbidden from speaking Spanish, and given less-favorable working conditions and assignments than non-Hispanic employees.

---

[5]Plaintiffs alleged additional claims in the Amended Complaint, but they were dismissed either by the Court or by stipulation.  Significantly, in its Decision and Order [#22] dismissing some of those additional claims, issued on January 23, 2008, the Court described each of the claims that had been pleaded in the Amended Complaint.  See, Decision and Order [#22] at p. 4.  As the Court stated, those claims were for disparate treatment discrimination and retaliation.  There is no claim for a hostile work environment under any of the pertinent statutes.  Such fact is significant, since as discussed further below, part of Plaintiffs' response to the subject summary judgment motion assumes that Plaintiffs are asserting hostile environment claims.  They are not.

Cromer is asserting claims for disparate treatment and retaliation under Title VII, Section 1981 and NYHRL.[6]  Cromer's disparate treatment claim alleges a failure to promote him.  His retaliation claim is twofold:  He alleges that he was fired because he expressed the opinion that the no-Spanish rule was discriminatory, and because, on a different occasion, he threatened to file a discrimination complaint. *See*, Amended Complaint [#10] at ¶ 66.

Following a period of discovery, Defendants filed this motion [#69], seeking summary judgment as to all claims.  On May 10, 2012, counsel for the parties appeared before the undersigned for oral argument.  At oral argument, Plaintiff's counsel agreed that Lopez's and Colon's Title VII claims are time-barred.

ANALYSIS

*Rule 56*

Summary  judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a

---

[6]Unlike Colon and Lopez, Cromer does not allege that he was treated differently than white employees with regard to working conditions generally. See, Amended Complaint [#10] at ¶ ¶ 44-72 and especially ¶ ¶ 69-70.  That is, he does not allege that he was required to work alone, or that he was required to work past the end of his shift.  In his affidavit submitted in opposition to summary judgment, Cromer indicates in conclusory fashion that he was disciplined for things for which white employees were not disciplined. Cromer Aff. ¶ 7.  However, as with Plaintiff's purported hostile environment claim, such claim was not pleaded in the Amended Complaint, and cannot be raised at this stage of the litigation in an affidavit in opposition to summary judgment.

prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).  Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)

9

(citations and internal quotations omitted).  Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Moreover, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829 (1985).

*Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).  It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den*. 522 U.S. 997 (1997). Consequently, unless otherwise noted, references to Title VII herein are also intended to refer to the NYHRL.  The same is true for claims under Section 1981. *See, White v. Eastman Kodak Co.*, No. 09-2770-cv, 368 Fed.Appx. 200, 202, 2010 WL 726629 at *1, n. 1 (2d Cir. Mar. 3, 2010) ("The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII.") (citation omitted).

*Hostile Environment*

The Court begins by observing that there is no hostile environment claim in this

action.  The legal standards for a hostile environment claim are well settled:

> In order to establish a hostile work environment claim . . .  a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.  A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive.  The plaintiff must show more than a few isolated incidents of racial enmity, although a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe.

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723-724 (2d Cir. 2010)

(citations and internal quotation marks omitted).  In response to the summary judgment motion, Plaintiffs devote much of their memorandum of law to discussing a hostile work environment.  However, the Amended Complaint does not contain a hostile environment claim.[7]  *See*, footnotes 2 and 3 above; *see also* Decision and Order [#22] at p. 4.  Nevertheless, the Court will consider the alleged instances of hostile conduct as evidence of discriminatory intent with regard to Plaintiffs' other claims.

*Disparate Treatment*

Disparate treatment discrimination claims are analyzed using the well-settled

*McDonnell Douglas*[8] burden-shifting framework:

> A plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a protected [group] . . . .; (2) was qualified to perform the duties required by the position; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred in

---

[7]At oral argument, Plaintiff's counsel agreed that the Amended Complaint does not specifically plead a hostile environment claim.  However, he argued that it does plead a NYHRL claim, which could encompass a hostile environment claim.  He further argued that if Defendants had requested a bill of particulars, Plaintiffs could have fleshed-out their theory of discrimination to included a hostile environment claim.  However, those arguments lack merit.

[8]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

circumstances that gave rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003).

***

Once the plaintiff presents a prima facie case[9], the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the defendant's articulation of a legitimate, non-discriminatory reason, the presumption of discrimination arising from the plaintiff's prima facie showing " 'drops out of the picture,' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000), and the burden of production shifts back to the plaintiff to adduce evidence sufficient for a reasonable jury to conclude that discrimination was a reason for the employment action, *see Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir.2000). In deciding a motion for summary judgment, the court is to examine "the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Id.* at 90 (*quoting Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). Thus, summary judgment is appropriate when the plaintiff "has presented no evidence upon which a reasonable trier of fact could base the conclusion that [discrimination] was a determinative factor" in the defendant's employment decision. *Schnabel*, 232 F.3d at 91.

*Butts v. NYC Dept. of Housing Preservation and Dev.*, No. 07-1930-cv, 307 Fed.Appx. 596, 2009 WL 190403 at *1-2 (2d Cir. Jan. 28, 2009); *see also, Terry v. Ashcroft*, 336 F.3d at 138 ("[O]nce the defendant has made a showing of a neutral reason for the complained of action, to defeat summary judgment the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.") (citations and internal quotations omitted).

---

[9] "A plaintiff's burden of establishing a *prima facie* case is *de minimis*. The requirement is neither onerous, nor intended to be rigid, mechanized or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 467 (citations and internal quotation marks omitted).

<u>The No-Spanish Policy</u>

Lopez and Colon are asserting claims under § 1981 and NYHRL, alleging that they were discriminated against, on the basis of their national origin, when they were told not to speak Spanish around their co-workers.  According to Lopez, Dunmyer said not to speak Spanish around non-Spanish-speaking co-workers, because it made them uncomfortable.  As mentioned earlier, Lopez and Colon each speak English and Spanish. Defendant states that even if Lopez and Colon were fired for speaking Spanish, that is not sufficient to establish a national-origin discrimination claim, since one's national origin is different than the language that one chooses to speak.

Generally, the fact that an employer has a policy preferring English over all other languages is not evidence of discriminatory intent. *See, Joseph v. North Shore Univ. Hosp.*, No. 11–1014–cv, 2012 WL 1086107 at *2 (2d Cir. Apr. 3, 2012) (Fact that Haitian employee was reprimanded for speaking French, which violated employer's policy to speak English unless assisting a patient who spoke French, did not support a discrimination claim on the basis of national origin); *Barbosa v. Continuum Health Partners, Inc.*, 716 F.Supp.2d 210, 220 (S.D.N.Y. 2010) ("[T]he enforcement of an English-only policy, in and of itself, does not constitute a hostile work environment on the basis of race.").  However, such a policy may raise an inference of discriminatory intent if supported by other evidence:

> While a speak-English instruction may form the basis for an inference of national origin discrimination if supported by other evidence, courts have upheld limited English-only policies against Title VII challenges when supported by valid business justification.

***

13

> Additionally, courts have been especially leery of finding a limited
> English-only policy's proffered justification to be a pretext when applied to a
> bilingual employee such as Plaintiff who is capable of communicating while
> not violating the policy.  Furthermore, courts have found that the fact that an
> employee has been asked or required to speak Spanish on the job
> undercuts any inference of discrimination when evaluating a limited
> English-only policy.

*Perez v. New York Presbyterian Hosp.*, No. 05 Civ. 5749(LBS), 2009 WL 3634038 at *14

(S.D.N.Y. Nov. 3, 2009).  The Court understands the foregoing legal principles to indicate

that an employer may require employees to speak English where there is a legitimate

reason for doing so, but it may not forbid employees from speaking their native tongues if

the reason is because of discriminatory animus toward the employee's national origin.

In this case, Colon cannot demonstrate that he suffered an adverse employment

action related to Defendant's English-only rule.  For example, Colon was not fired for

speaking Spanish, and the requirement that he not speak Spanish around co-workers is

not itself an adverse employment action.  Accordingly, Defendants are entitled to

summary judgment against Colon as to the English-only claim.  However, Lopez

maintains that he suffered an adverse employment action, because he was fired for

speaking Spanish.  Lopez contends that his firing was discriminatory on the basis of his

national origin, and for evidence of discriminatory animus he cites the no-Spanish policy,

as well as Dunmyer's alleged statement that Plaintiff should "go home and sit on his

Puerto Rican bum," and the alleged unequal working conditions that he and Colon

experienced.  Defendants nevertheless offer a non-discriminatory reason for firing Lopez,

which is that he was an unreliable employee.  Defendants further argue that it is unlikely

that Dunmyer harbored discriminatory animus, because he hired Lopez only a few

14

months before firing him.  However, Lopez denies that he was absent and/or tardy on the days alleged by Defendants.   Based on the entire record, the Court finds that there are triable issues of fact that preclude summary judgment on Lopez's no-Spanish national origin claim.

<u>Unequal Working Conditions</u>

Lopez and Colon maintain that they suffered disparate treatment discrimination when they were forced to work alone, while white employees worked in groups, and when they were forced to work past the end of their shifts, when white employees were not. Defendants maintain that Lopez and Colon cannot demonstrate a prima facie disparate treatment claim based on those allegations, since such claim does not involve an adverse employment action.  For purposes of this motion, Colon and Lopez were members of a protected class, they were qualified for their positions, and they were treated differently under circumstances suggesting a discriminatory intent, since they are both hispanic and were treated less-favorably than their white co-workers.  However, Lopez and Colon must also show that they suffered an adverse employment action. Clearly, Lopez suffered an adverse employment action when he was fired.  However, he maintains that he was fired for complaining about the no-Spanish policy.  He does not claim that his firing had anything to do with the alleged unequal working conditions. Accordingly, his firing is not an adverse employment action as to this claim.  On the other hand, Colon was not fired at all.

The issue therefore is whether having to work alone, while white employees worked in groups, and having to work past the end of the shift, while white employees did not, are adverse employment actions.  Defendants argue that such events are insufficient

to establish an adverse employment action, as part of a prima facie case, since Lopez and Colon were merely performing their normal job duties.  However, even the performance of normal job duties can amount to an adverse employment action if they are divvied between co-workers in a discriminatory fashion.

> A "[d]isproportionately heavy workload could perhaps be an adverse action, if the additional work significantly changed the employee's responsibilities so as to diminish that worker's role or status, or exposed the worker to dangerous or extreme conditions not appropriate to her job classification." *Young v. Rogers & Wells LLP*, No. 00 Civ. 8019(GEL), 2002 WL 31496205, at *5 (S.D.N.Y. Nov.06, 2002). In *Feingold* [*v. New York*, 366 F.3d 138 (2d Cir. 2004)], the Second Circuit held that the plaintiff had demonstrated that he was subjected to an excessive workload as a result of discriminatory intent. *Feingold*, 366 F.3d at 153. Specifically, the plaintiff presented evidence that cases originally assigned to African-American individuals were reassigned to white individuals, and that assignments were often re-shuffled to give the white individuals more work.

*Chacko v. Connecticut*, No. 3:07-cv-1120 (CFD), 2010 WL 1330861 at *7 (D.Conn. Mar. 30, 2010).  In *Feingold*, the Second Circuit found that such discriminatory assignment of work was sufficient to establish an "adverse employment action," even though the tasks that the Plaintiffs were performing fell within their job descriptions. *Feingold*, 366 F.3d at 152-153.  That is, the plaintiffs were performing normal job duties, but they were forced to carry a disproportionate load of the work, because they were white.

Here, the Amended Complaint does not allege how many times Lopez and Colon were allegedly made to work alone or past the end of their shifts. *See*, Amended Complaint [#10] at ¶ ¶ 69-70.  Although Colon testified at deposition that he only worked

alone "a couple times," Colon Dep. at 30,[10] he did not indicate that he was assigned to

work alone.  Rather, he stated that he was assigned to work with other employees, but

the employees were slow in joining him:

> Q. Did you feel like you were treated differently in those duties?
>
> A. A couple times.
>
> Q. How is that?
>
> A. When it was time to unload the bags, I used to be out there doing it until the other guy decided to go out there to work.
>
> Q. What guy?
>
> A. The other guys that were that [sic] were supposed to be in the group with me.
>
> Q. I am not sure I understand?
>
> A. There used to be a group.
>
> Q. A group of what?
>
> A. Of employees assigned to be together to do the planes.
>
> ***
>
> Q. And you were with that group?
>
> A. I was with the group when I get there, and then they changed the group because after 12:00, 1:00, there is different people coming in, and they used to assign me with mostly Caucasian, and when the time came to unload, they used to wait for me to go out there and start it out first, you know, to unload the bags.

Colon Dep. at pp. 30-31.  At most, such testimony suggests that Colon's co-workers were

---

[10]In a subsequent affidavit, Colon states that he was forced to work alone "throughout his employment." Colon Aff. ¶ 22.  However, a party may not defeat a summary judgment motion by submitting an affidavit that contradicts his earlier sworn testimony.

shirkers.  Such testimony does not create an inference of an adverse employment action by Defendants.  Colon, though, further states that he complained to his supervisor about the situation, and asked for help, but his supervisor denied the request, although he gave assistance to white employees when they asked for help. Colon Dep. at pp. 32-33.  Colon also testified that white employees would leave work at the end of their shifts, but if he was involved in unloading a plane when his shift ended, his supervisor would tell him to stay and finish unloading the plane. Colon Dep. at pp. 38-40.  The record before the Court does not contain any information indicating that Lopez was treated similarly to Colon with regard to these working conditions. *See*, Lopez deposition excerpts and Lopez Affidavit.

On these facts, the Court finds that Colon has met the low threshold necessary to establish, for purposes of his prima facie case, that he suffered an adverse employment action, although just barely.  Defendants have not proffered a non-discriminatory reason for the alleged unequal treatment.  Accordingly, Defendant's motion for summary judgment against Colon on this claim is denied.  However, the motion is granted as to Lopez, since he has not made any showing that he suffered an adverse employment action with regard to unequal working conditions.

<u>Failure to Promote</u>

Colon and Cromer contend that Defendants discriminated against them by failing to promote them to the positions of Lead Ramp Agent and Supervisor, respectively. The applicable legal principles are as follows:

> In order to make out a prima facie case of discriminatory failure to promote, in violation of Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3)

she was denied the job, and (4) the denial occurred under circumstances giving rise to an infere

*Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).  Although

> a plaintiff alleging failure to promote ordinarily must show that he or she
> applied for the specific job or jobs at issue, that requirement does not apply
> where . . . the plaintiff indicated to the employer an interest in being
> promoted to a particular class of positions, but was unaware of specific
> available positions because the employer never posted them. In such a
> situation, requiring the plaintiff to show that he or she applied for the
> specific jobs at issue would be unrealistic, as an employee by definition
> cannot apply for a job that he or she does not know exists.

*Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 386-387 (2d

Cir. 2000).

Defendants maintain that Colon and Cromer cannot establish their "failure to

promote" claims, since they cannot demonstrate that they were clearly more qualified

than the people who were promoted.  In that regard, Defendants contend that the

candidates who were promoted were better qualified than Colon or Cromer, and that

Colon's and Cromer's subjective beliefs that they were better qualified are not sufficient

to defeat summary judgment.  Defendants further allege that Plaintiffs cannot

demonstrate that the failure to promote them occurred under circumstances suggesting a

discriminatory animus.

As for the requirement to show that the failure to promote occurred under

circumstances giving rise to an inference of discriminatory animus, Colon and Cromer

have shown that they are Hispanic and African-American, respectively, while five of the

six positions were filled by whites, and that the supervisors who promoted the men were

also white.  Colon and Cromer have also shown that some or all of the positions were

never posted before they were filled.  Such showing of possible discriminatory animus is

sufficient to meet the low threshold for a prima facie case.

Defendants nevertheless argue that these claims fail, because Colon and Cromer cannot show that their credentials were "so superior to the credentials of the person[s] selected for the job[s] that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over the plaintiff[s]." Def. Memo of Law [#69-3] at p. 7-8 (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 103 (2d Cir. 2001)). Defendants argue that, pursuant to the Second Circuit's decision in Byrnie, "even if this Court finds Plaintiffs were equally qualified, for the positions at issue, their claims must fail as a matter of law." Def. Memo of Law [#69-3] at p. 8.  The Court disagrees.

Defendants reliance on Byrnie is misplaced.  Specifically, Byrnie was an age-discrimination case where the qualifications of two candidates were clear and undisputed, and the candidate whose qualifications, "on paper," were better, was passed over in favor of a younger, less-experienced candidate.  The defendant school district argued that it had hired the younger candidate because she performed better during interviews.  In discussing the showing that the plaintiff would be required to make in order to show that the proffered reason was pretextual, the Second Circuit held that if the plaintiff were to rely solely on the fact that he was better qualified, he would be required to make a very strong showing:

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

20

question.

*Byrnie v. Town of Cromwell*, 243 F.3d at 103 (citation omitted).  The Second Circuit went on to find that even though the plaintiff's qualifications alone were not so far superior as to create a triable issue of fact on their own, they nevertheless had probative value, and together with other factors, they created a triable issue of fact sufficient to defeat summary judgment. *Id*.  at 103-107.

Here, Colon and Cromer are not relying solely on their contentions that they were better qualified for the positions.  As to that, on the present record the actual qualifications and relative merits of the various candidates are unclear.  It is also unclear whether any of those promoted actually met all of the requirements that Defendants say they relied upon in seeking applicants.  For example, the job description for "Supervisor" provided by Defendants indicates that applicants must have

> [a]t least 2 years previous commercial airline/aircraft services company ramp experience at a supervisor/management level or military flight line experience.

Cordello Aff., Ex. B, Bates Doc. FSS000792.  When John Consul was hired by Flight Services in April 2005, he was hired as a Lead Ramp agent, even though he had only worked at another airline for three months, as a ramp agent, which is not a supervisory or management level position.  Shortly after being hired, Consul was promoted to Supervisor, even though it does not appear that he had any prior airline, military or supervisory experience, apart from his brief stint as Lead Ramp Agent. *See*, Cordello Aff., Ex. B, Bates Docs. FSS00324, FSS000636, FS000643.  Shane Ladue was promoted to Supervisor less than four months after being hired as a Ramp Agent.

21

Specifically, Ladue was hired as a Ramp Agent on July 1, 2005, promoted to Lead Ramp Agent on September 16, 2005, and promoted again to Supervisor on October 1, 2005. Cordello Aff., Ex. B, Bates Docs. FSS000705-FS000707.  Defendants indicate that Ladue had "prior military leadership experience," but the nature and extent of that experience is unexplained. *See*, Cordello Aff., Ex. B, Bates Doc. FSS000324.

On the other hand, it is undisputed that Cromer had worked for U.S. Air for over a year, as a ramp agent, before U.S. Air outsourced the flight services contract to Flight Services.  Cromer was then hired from U.S. Air by Flight Services.  Accordingly, Cromer had been on the job far longer than some of the men who were promoted, and had trained some or all of them as Ramp Agents.  Moreover, Dunmyer did not seek applications for the jobs, but instead, merely selected employees for promotion, some of whom had only worked for Flight Services for a short time.  There is also evidence that Dunmyer made inappropriate comments, such as referring to Cromer as a nigger and telling a Hispanic employee to go home and "sit on his Puerto Rican bum."  From all of the foregoing, there are issues of fact precluding summary judgment on the failure to promote claims.

*Retaliation*

Title VII retaliation claims are also analyzed using the *McDonnell Douglas* three-tier burden-shifting test discussed above. *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

> "Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  First, the plaintiff must establish a prima facie case of retaliation by showing: " '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " *Jute*, 420 F.3d at 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001)). The plaintiff's burden in this regard is " de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation marks omitted).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010).

It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  In deciding whether a particular activity amounts to "protected activity," "the employment practices opposed by the plaintiff need not have actually amounted to a violation of Title VII.  Rather, the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001). "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. National*

23

*Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

<u>Lopez's Retaliation Claim</u>

In their summary judgment motion, Defendants contend that Lopez cannot

establish a claim, because he did not engage in protected activity, and because he was

fired for a non-discriminatory reason, namely, because he was unreliable.  However,

Lopez maintains that Defendants fired him the day after he complained about the "no-

Spanish" policy.  Lopez contends that he complained about Dunmyer's rule by calling and

leaving a message for Sarah Collier at Human Resources.  Moreover, he disputes almost

all of the alleged incidents of un-excused absences and tardiness upon which

Defendants relied in terminating his employment.   Accordingly, there are triable issues of

material fact as to Lopez's retaliation claim.

<u>Cromer's Retaliation Claim</u>

Defendants maintain that Cromer did not engage in protected activity, since he

never utilized Flight Services' internal complaint procedure.  Defendants also maintain

that Cromer was fired for a non-discriminatory reason, namely, that they believed that he

was lying about an accident involving a luggage cart.  Defendants further contend that

any inference of discriminatory intent is negated by the fact that they offered Cromer his

job back, following the OSHA investigation.  However, Cromer maintains that he engaged

in protected activity, by telling Dunmyer that the no-Spanish policy was discriminatory,

and by later threatening to file his own discrimination complaint.  Cromer further

maintains that the reason Defendants give for firing him is pretextual, since the OSHA

investigation showed that he was likely not at fault for damaging the luggage cart.  There

are triable issues of fact precluding summary judgment on this claim.

CONCLUSION

Defendants' motion [#69] is granted in part and denied in part.  Defendants are granted judgment on Lopez's and Colon's Title VII claims.  To the extent that Plaintiffs are attempting to assert un-pleaded claims from hostile environment discrimination, they are dismissed.  Defendants' motion is granted as to Colon's no-Spanish claim, and denied as to Lopez's no-Spanish claim. Defendants' motion is denied as to Colon's unequal working conditions claim, and is granted as to Lopez's unequal working conditions claim.  Defendants' motion is denied as to the retaliation claims by Lopez and Cromer.  Defendants' motion is also denied as to Colon's and Cromer's failure to promote claims.

SO ORDERED.

Dated: Rochester, New York
       May 23, 2012

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge